```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                  FORT MYERS DIVISION
```

JOHN GARY RICHARD LINK,

      Petitioner,

v.	Case No: 2:17-cv-260-FtM-29MRM

SECRETARY, DOC, WARDEN, BAY
CORRECTIONAL FACILITY, and
FLORIDA ATTORNEY GENERAL,

      Respondents.

## OPINION AND ORDER

Petitioner John Gary Richard Link (petitioner or Link) filed a Petition for Writ of Habeas Corpus By a Person in State Custody Under 28 USC § 2254 (Doc. #1, Petition) on May 12, 2017. Link, a Florida prisoner, challenges his convictions and sentences for burglary of an unoccupied structure, criminal mischief, and obstructing an officer without violence entered by the Twentieth Judicial Circuit Court in and for Lee County in Case No. 11-CF-18261. (Doc. #1, p. 2; Doc. #15, p. 2). The petition sets forth a single ground for relief, asserting that the:

> Post-conviction court committed reversible error when denying appellant's 3.850 motion for post-conviction relief when making determination with facts that were not supported by competent, substantial evidence, thus prevented a proper application of the Strickland standard.

(Doc. #1, p. 3). Respondent filed a Response (Doc. #15, Response) on August 17. 2018, including the state court record. (Docs. ##

17, 17-1, 17-2). Link filed a Reply on September 4, 2018. (Doc. #18).

For the reasons set forth below, the Petition for Writ of Habeas Corpus is denied.

## I. Applicable Federal Habeas Corpus Principles

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The AEDPA requires a state prisoner seeking federal habeas relief to first "exhaus[t] the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). If the state courts do not adjudicate the prisoner's federal claim "on the merits," a *de novo* standard of review applies in the federal habeas proceeding; if the state courts do adjudicate the claim on the merits, then the AEDPA mandates a deferential, rather than *de novo*, review. Kernan v. Hinojosa, 136 S. Ct. 1603, 1604 (2016).

This deferential standard is set forth in § Section 2254(d), which provides:

> "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—"
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application

> of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and intentionally difficult to satisfy. Sexton v. Beaudreaux, 585 U.S. ___, 138 S. Ct. 2555, 2558 (2018); White v. Woodall, 572 U.S. 415, 419 (2014).

"Clearly established federal law" consists of the governing legal principles in the decisions of the United States Supreme Court when the state court issued its decision. White, 572 U.S. at 419. Habeas relief is appropriate only if the state court decision was "contrary to, or an unreasonable application of," that federal law. 28 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable

manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 529 U.S. at 406). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011). See also Nance v. Warden, Ga. Diagnostic Prison, 922 F.3d 1298, 1301 (11th Cir. 2019) ("To justify federal habeas relief, the state court's decision must be so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.")(internal quotation marks omitted).

When reviewing a claim under § 2254(d), any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Burt v. Titlow, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.") (quoting Wood v. Allen, 558 U.S. 290, 293 (2010)). See also Morrow v. Warden, 886 F.3d 1138,

1146 (11th Cir. 2018).

For the deferential § 2254(d) standard to apply there must have been an "adjudication on the merits" in state court. An adjudication on the merits does not require there be an opinion from the state court explaining the state court's reasoning. Harrington v. Richter, 562 U.S. 86, 98 (2011). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Richter, 562 U.S. at 99–100. This presumption applies whether the state court fails to discuss the claims or discusses some claims but not others. Johnson v. Williams, 568 U.S. 289, 293, 298-301 (2013).

While such a decision is an "adjudication on the merits," the federal habeas court must still determine the state court's reasons for its decision in order to apply the deferential standard. When the relevant state-court decision on the merits is not accompanied by its reasons,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same

> reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The federal court "looks through" the silent state court decision "for a specific and narrow purpose—to identify the grounds for the higher court's decision, as AEDPA directs us to do." Id. 138 S. Ct. at 1196.

**II. Timeliness, Exhaustion, and Evidentiary Hearing**

Respondent concedes that the Petition is timely and that the claim for relief was properly exhausted. (Doc. #15, pp. 4-5). The Court agrees. Petitioner does not request an evidentiary hearing, and the Court finds the facts are well-developed in the record, so an evidentiary hearing is not otherwise warranted. Schriro v. Landrigan, 550 U.S. 465, 474 (2007); 28 U.S.C. § 2254(e)(2).

**III. Factual and Procedural Overview**

On September 13, 2011, Link was charged by Information with burglary of an unoccupied structure, criminal mischief, and obstructing an officer without violence (Ex. 1, pp. 2-3).[1] Link

---

[1] The Court will refer to exhibits electronically filed by Respondent on August 21, 2018 (Doc. #17-2) as "Ex. _" followed by the page number electronically generated by the court upon filing.

also had two violation of probation cases pending, for a total of three pending cases. On June 26, 2013, Link proceeded to a jury trial before Lee County Circuit Judge Bruce E. Kyle (Judge Kyle) as to the charges in the Information. The jury found Link guilty as charged on all counts (Ex. 2, p. 5). Link was classified as a habitual felony offender, and on August 12, 2013, was sentenced to ten years on the burglary charge and time served on the criminal mischief and obstructing an officer without violence charges (Ex. 3, pp. 7-16).

Link filed a notice of appeal (Ex. 4, p. 19). Link's appellate counsel filed an Anders[2] brief asserting there were no issues of merits for appeal (Ex. 5, pp. 21-35). Link filed a *pro se* Notice of Voluntary Dismissal (Ex. 6, pp. 37-38), and on June 1, 2015, the Second District Court of Appeals granted Link's voluntary dismissal (Ex. 7, p. 40).

On July 8, 2015, Link filed a motion under Florida Rules of Criminal Procedure Rule 3.850 alleging one ground of ineffective assistance of counsel (Ex. 8, pp. 42-57). Judge Kyle, serving as the State post-conviction trial court, accurately summarized petitioner's claim as follows:

> 8. Defendant filed the present timely postconviction motion on June 15, 2015. In his motion, Defendant raised a single ground of ineffective assistance of counsel: "allowing a plea offer to lapse without conveying to the State that Defendant had timely

---

[2] Anders v. California, 386 U.S. 738 (1967).

> accepted the offer prior to [its] expiration."  In his motion, Defendant alleges that prior to his trial, he was offered a plea, that would resolve all three of his pending cases "in exchange for 48 months in DOC."  He pleads that his attorney advised him that the State had an "overwhelming" amount of evidence against him, and that even if he prevailed at trial in case number 11-CF-18261, he would still be subject to sentences in his VOP cases that were greater than the prison term offered in the deal.  Defendant pleads that the plea offer was open "until April 3, 2013."  Defendant pleads that his attorney said he had to notify him either by phone or in writing before that date if he were to choose to accept the State's offer.  Defendant goes on to explain that on March 31, 2013 - the Sunday before the Wednesday on which the offer would lapse - he drafted a letter asking his attorney to "accept the 48 months or try to get them down to 36 months."  He gave the letter to jail officials for mailing on the following day, Monday, April 1, 2013. Defendant then claims that "counsel was deficient . . . by failing to convey to the State that [Defendant] had timely accepted the 48 month offer, even if the State again were to reject the 36 month counteroffer."  He claims that the offer lapsed and was withdrawn "due to counsel's deficient performance."

(Ex. 10, p. 238).

On December 3, 2015, the post-conviction court held an evidentiary hearing at which Link was represented by appointed counsel (Ex. 9).  Three witnesses testified on behalf of Defendant: two friends, Jamie Dontas and Michael Dontas, and Defendant himself.  The State called defendant's trial counsel, K. J. Myllynen, and the State prosecutor assigned to Defendant's case, Abraham Thornburg.  The post-conviction court set forth his relevant findings:

> 12. . . . Rather, the facts relevant to this motion are those surrounding Defendant's attempt to accept the plea offer and the actions of defense counsel that followed.

13. Defendant testified at the hearing that he was appointed a private attorney from the registry after his prior two attorneys conflicted off due to <u>Nelson</u> motions. He claimed that their first and only face-to-face meeting was about thirty minutes long. He claimed that his attorney told him that he did not care about his case and was more concerned about getting his death penalty license and about the fees he would earn by doing Defendant's case. Defendant also claimed that his attorney never came to see him again at the jail and they only spoke for a few minutes at a time at his subsequent court dates. He testified that a 48 month offer was extended to him at one of his court dates and that he had two weeks to accept it. Defendant testified that he wrote a letter to his attorney on Sunday, March 31 and gave it to jail officials for mailing on Monday, April 1; the deadline to accept the plea was Wednesday, April 3. In his letter, he told his attorney to negotiate a better deal, but if a better deal could not be negotiated, he would accept the 48 month offer. He testified that he did not get a response or find out that the offer was gone until his next court date, when his attorney told him that his only options now were to enter an open plea or go to trial.

14. On cross-examination, Defendant claimed that it was "always" his intention to enter a plea in his cases. Despite this claim, he later confirmed that he rejected two prior offers in his case: one for two years in prison followed by three years of probation, and another for four years in prison followed by four years of probation. Defendant confirmed that he had the ability to call his attorney from the jail, although his attorney would have little to no ability to call him back. Defendant admitted that he did not know what his attorney's schedule or workload was like and did not know when the letter was actually mailed after he gave it to jail officials.

15. Defendant's trial attorney K. J. Myllynen also testified at the hearing. He has been a member of the Florida Bar since 2008 and his practice focuses on criminal defense and personal injury. He has an office in Boca Raton, Florida and Ft. Lauderdale, Florida. In contrast to Defendant's testimony, Mr. Myllynen testified that their initial meeting at the jail was

- 9 -

over three hours long. He remembers that Defendant was very frustrated and had many concerns that he wanted to discuss with him. Mr. Myllynen denied using vulgarity during this meeting and said that Defendant asked him about his credentials, which is how his death penalty certification and fees came up. Mr. Myllynen also testified that he spoke with Defendant for "countless hours" in the small interview room next to the undersigned judge's courtroom, the purpose of which is to allow attorneys and inmates to discuss their cases in private before and after court dates.

16. Mr. Myllynen's description of the case leading up to the four year plea offer was informative. At one point, questions of Defendant's competency arose and a competency evaluation was permitted by the Court. Mr. Myllynen testified that Defendant absolutely refused the four year offer leading up to the rise of the competency issues and wanted the State's older offer of two years in prison with three years of probation instead. When Defendant was confirmed as competent to stand trial, the State again offered him the four year deal at a hearing on March 19, 2013. Mr. Myllynen testified that he advised Defendant to accept the offer, but Defendant "ad nauseam" rejected the four year offer and insisted on the prior offer of two years of prison with three months of probation.

17. Most importantly, Mr. Myllynen testified that he received Defendant's letter accepting the offer after the offer had already closed on Wednesday, March [sic] 3, 2013. Although he did not remember the exact day he received it, he said it was on Thursday, March [sic] 4 or Friday, March [sic] 5. After reading the letter, he tried to call the assistant state attorney handling Defendant's case and left at least two messages. Mr. Myllynen next spoke with Defendant about the letter on May 6, 2013, the next court date. He testified that a Nelson hearing was scheduled for that day, but Defendant chose to withdraw it and go to trial. Mr. Myllynen described Defendant as "adamant" that he would prevail at trial.

18. Abraham Thornburg, the assistant state attorney who was handling Defendant's cases, testified next. He testified that, prior to the competency evaluation, the four year offer had actually been open for six months

- 10 -

>and had lapsed without Defendant accepting it. Because questions of Defendant's competency had risen, he decided to re-offer the lapsed deal in an effort to avoid any postconviction claims that Defendant was incompetent during the earlier six month period when the offer was open.
>
>19. On cross-examination, Mr. Thornburg said that if Mr. Myllynen had called him shortly after the plea offer had lapsed and said that Defendant wanted to accept the plea, he would have allowed it and set the case for a plea. Mr. Thornburg was not asked about the messages left on his voicemail by Mr. Myllynen.
>
>20. On rebuttal, Defendant denied that he spoke with his attorney for "countless hours" in the interview room connected to the courtroom. He also admitted that he is a five-time convicted felon, two of which were crimes of dishonesty.

(Ex. 10, pp. 239-42).

The post-conviction court set forth the applicable law as follows:

>21. Under Strickland v. Washington, 466 U.S. 668 (1984), in order to establish a *prima facie* case of ineffective assistance of counsel, a defendant must allege sufficient facts satisfying a two-pronged test. First, he must identify particular acts or omissions by counsel that are outside the broad range of reasonable assistance under prevailing professional standards. Id. at 690. Second, he must also demonstrate prejudice, i.e., that a reasonable probability exists that, but for counsel's error, the result in the case would have been different. Id. at 694. A "reasonable probability" is that which is sufficient to undermine the confidence in the outcome of the case. See King v. Strickland, 748 F.2d 1462 (11th Cir. 1984). Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment as a sound trial strategy. Strickland, 466 U.S. at 690. Furthermore, "an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."

> Id. at 691.
>
> 22. Alcorn v. State, 121 So.3d 419 (Fla. 2013), sets forth the necessary facts that must be alleged in order to make a facially sufficient ineffective assistance of counsel claim involving failure to convey a plea offer o[r] misadvice regarding a plea offer. However, Defendant does not allege that he was misled or that he was not adequately explained the consequences of pleading, nor does he allege that his attorney failed to convey some or all of the terms of the plea itself; he confirmed in his motion and his testimony that counsel advised him numerous times to accept the State's offer. Moreover, Alcorn considered a case in which the deficiency of counsel's performance was not in dispute. Rather, "the question center[ed] on how to apply the prejudice prong." Id. at 422. The four requirements above inform the courts as to "what the defendant must show in order to demonstrate prejudice." Id. Indeed, the first requirement, "that [Defendant] would have accepted the offer had counsel advised the defendant correctly," assumes a deficiency in performance from the beginning. Id.

(Ex. 10, pp. 242-43).

On January 8, 2016, the postconviction court denied Mr. Link's 3.850 motion in a written order with attached exhibits. (Ex. 10.) The post-conviction court set forth its findings as follows:

> 23. Alcorn is not on point with the postconviction claim here. Here, the prejudice caused by counsel's actions, if deficient, is clear. Rather, the issue is whether counsel's actions constituted ineffective assistance of counsel in the first place. After reviewing the record and hearing the testimony presented at the hearing, the Court concludes that defense counsel's actions were not ineffective, and therefore Defendant's postconviction motion must be denied.
>
> 24. First of all, it is clear that Defendant was unable to accept the plea offer because he mailed his letter accepting the offer too close to the deadline, not because of any action or inaction on the part of counsel. Mr. Myllynen testified that he received the letter *after*

the offer had already lapsed, which is uncontroverted by any other testimony or evidence presented at the hearing. Because Mr. Myllynen had no control over when Defendant mailed his letter, how quickly it arrived at his office, or whether it would arrive before or after the offer lapsed, it cannot reasonably be said that the offer's expiration was due to any deficient performance on the part of counsel.

25. Second, the Court is not persuaded by Defendant's argument that defense counsel should have taken additional unspecified actions after receiving the letter and that his failure to do so is what caused the plea offer to lapse. Mr. Myllynen testified that he called Mr. Thornburg to tell him about the letter immediately after receiving it. When Mr. Thornburg did not answer, he left a voicemail instead. Mr. Myllynen left at least two such voicemails in an effort to speak with Mr. Thornburg after receiving the letter. The Court finds this a reasonable action of a competent attorney and rejects Defendant's position that defense attorneys must barrage the State with multiple repetitive phone calls and voicemails in such a situation. Moreover, the fact that Mr. Thornburg may have been willing to entertain a late acceptance of the offer cannot be a factor in the Court's consideration of whether <u>defense counsel's</u> actions were ineffective, unless counsel was aware of such willingness. There is nothing in the record indicating that counsel was aware of Mr. Thornburg's willingness to ignore the deadline he had set for the plea offer, nor is it logical in general to base the effectiveness standard of defense counsel on discretional decisions of the State.

26. Third, the Court finds that Defendant's March 1 [sic] letter was not a clear acceptance of the plea offer. In the letter, which is attached to this order as exhibit 0, Defendant instructs his attorney to either try to negotiate a better plea offer *or* accept the four year offer. Thus, in order for defense counsel to comply with what was actually written in the letter, he would have needed to speak with the State first in order to make a final attempt at securing a better deal for his client – *without* divulging that Defendant was willing to accept the offer if further negotiations were unsuccessful, because the State would have no reason to strike a better deal if it knew Defendant would accept

>   the four year offer anyway. Therefore, Mr. Myllynen's two messages in which he tells Mr. Thornburg about receiving the letter, without explicitly saying that Defendant wanted to accept the plea, complied fully with the instructions Defendant had given to his attorney.
>
>   27. The Court understands that Defendant attempted to accept the plea offer within the time limit. However, he was deprived of the offer's benefits not because of any action on the part of his attorney, but because he attempted to accept the offer by mailing a letter at the "last minute," in which he authorized his lawyer to accept only if a better deal could not be achieved first. Defendant was fully informed and aware of the deadline set by the State, he was aware of the consequences of the offer lapsing because an identical offer had been extended to him previously, and his attorney had advised him to accept the offer multiple times in the months leading up to April 1, 2013. Counsel's actions were not deficient. Defendant has failed to prove at an evidentiary hearing the ineffective assistance of counsel alleged in his motion; therefore, his motion must be denied.

(Ex. 10, pp. 243-45).

On January 28, 2016, Link filed a notice of appeal (Ex. 11). After briefing, on November 16, 2016, the Second District Court of Appeals affirmed the post-conviction court's order denying Link's 3.850 Motion without written opinion (Ex. 15). See also Link v. State, 212 So. 3d 365 (Fla. 2d DCA 2016) (2D16-386). Mandate issued on March 6, 2017 (Ex. 16).

**IV. § 2254 Issues and Analysis**

Petitioner argues that the post-conviction court committed reversible error when it denied petitioner's Rule 3.850 motion. Petitioner asserts that the post-conviction court made determinations of facts that were not supported by competent,

substantial evidence, which caused an improper application of the Strickland standard. Petitioner asserts that the rejection of his claim that counsel was ineffective for failing to convey his timely acceptance of the state's 48-month plea offer was unreasonable based upon the evidence and was contrary to Strickland.

For the reasons set forth below, the Court finds that petitioner is not entitled to relief under § 2254.

It is well-established that

> [t]o prevail on a Sixth Amendment claim alleging ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that his counsel's deficient performance prejudiced him. To show deficiency, a defendant must show that "counsel's representation fell below an objective standard of reasonableness." And to establish prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Andrus v. Texas, 140 S. Ct. 1875, 1881 (2020) (internal citations to Strickland omitted). The state post-conviction court clearly followed the correct law by applying the Strickland two-part standard to claims of ineffective assistance of counsel arising out of the plea-bargaining process. See Missouri v. Frye, 566 U.S. 1134 (2012); Lafler v. Cooper, 566 U.S. 156 (2012). In these cases, the Supreme Court clarified that the Sixth Amendment right to effective assistance of counsel extends specifically "to the negotiation and consideration of plea offers that lapse or are

rejected." In re Perez, 682 F.3d 930, 932 (11th Cir. 2012) (per curiam). See also McKathan v. United States, 969 F.3d 1213, 1222 (11th Cir. 2020).

Link contends his letter was timely because it was delivered to correctional officials for mailing before the expiration date of the State's offer. This appears to be an argument that Florida's "mailbox rule" should apply to his correspondence to his counsel.

> In Florida, courts presume a legal document from an incarcerated person was timely served and filed if "it contained a certificate of service showing that the document was placed into the hands of prison officials for mailing on a specific date and if the document would have been timely filed or served had it been received by the court on that date." Wimbush v. Pasco Cnty. Sheriff's Office, 829 So.2d 296, 297 (Fla. 2d DCA 2002) (citing Thompson v. State, 761 So.2d 324, 326 (Fla. 2000)). This "mailbox rule" applies to documents from inmates in both civil and criminal cases. Id. (citing Griffin v. Sistuenck, 816 So.2d 600 (Fla. 2002)).

Ross v. Ross, 93 So. 3d 495, 496 (Fla. 2d DCA 2012). See also Houston v. Lack, 487 U.S. 266 (1988). A letter to defense counsel, however, is not a legal document that is filed in court, but a document protected by the attorney-client privilege. Therefore, the mailbox rule did not apply to Link's correspondence with his counsel. Additionally, as discussed later, the correspondence was not an unconditional acceptance of the State's offer.

Link takes issue with several of the factual findings made by

the post-conviction court. Link argues the evidence demonstrates that he "accepted" the state plea offer "in a timely manner" and that defense counsel "ignored" his acceptance and "failed to make contact with the state" to inform the state of his acceptance of the 48-month plea. (Doc. #1, p. 6). Link also argues that Mr. Myllynen "had plenty of time to convey to the state that his client wanted to accept the 48-month plea offer, but failed to do his job." (Id., p. 7). Petitioner claims the state post-conviction court wrongly rejected the testimony of witnesses Jamie Dontas and Michael Dontas, which demonstrated petitioner was trying to contact his attorney to accept the 48-month plea deal. (Id.). None of petitioner's arguments are well-founded.

While it may be possible to accept an offer as of the date of a mailing, Republic of Sudan v. Harrison, 139 S. Ct. 1048, 1057 (2019) ("As first-year law students learn in their course on contracts, there is a presumption that a mailed acceptance of an offer is deemed operative when 'dispatched' if it is 'properly addressed.'" (citations omitted)), this was not the situation here. Link's letter to counsel did not accept the State's offer, let alone in a timely manner. Rather, it directed counsel to make a counter-offer, and to accept the State's offer only if his counter-offer was rejected. Thus, the post-conviction court properly found

> that Defendant's March 1 [sic] letter was not a clear

>  acceptance of the plea offer.  In the letter, which is attached to this order as exhibit 0, Defendant instructs his attorney to either try to negotiate a better plea offer *or* accept the four year offer.  Thus, in order for defense counsel to comply with what was actually written in the letter, he would have needed to speak with the State first in order to make a final attempt at securing a better deal for his client - *without* divulging that Defendant was willing to accept the offer if further negotiations were unsuccessful, because the State would have no reason to strike a better deal if it knew Defendant would accept the four year offer anyway. Therefore, Mr. Myllynen's two messages in which he tells Mr. Thornburg about receiving the letter, without explicitly saying that Defendant wanted to accept the plea, complied fully with the instructions Defendant had given to his attorney.

(Ex. 10, pp. 244-45.).

The record also establishes that counsel did not "ignore" petitioner's correspondence, or fail to make contact with the State, or have "plenty of time" to do so.  The State renewed its offer to Link of a 48-month plea at a court hearing held on March 19, 2013, and gave him until April 3, 2013 to accept.  Link wrote his correspondence to counsel on March 31, 2013, and gave it to jail personnel on Monday April 1, 2013.  Defense counsel did not receive the letter until one or two days <u>after</u> the plea offer's expiration date and left at least two messages for the state attorney about receiving the April 1, 2013 letter.  The State post-conviction court's factual findings are not unreasonable under § 2254(d)(2) and are fully supported by the record, and there has been no unreasonable application of those facts.

Further, the state court's determination that the testimony of Jamie Dontas and Michael Dontas was not relevant to the issue of whether defense counsel failed to convey a timely accepted plea offer is supported by the record. Both witnesses could not confirm the dates they allegedly called defense counsel and testified, only that they asked him to visit Link in jail. Neither witness stated they communicated Link's acceptance to the 48-month plea deal to defense counsel. (Ex. 9, pp. 86-100).

Based upon a thorough review of the record, the Court finds Link has failed to show that the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

## V. Certificate of Appealability

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such

a showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (citations omitted).  Petitioner has not made the requisite showing here and may not have a certificate of appealability on the ineffective assistance of counsel claim set forth in his Petition.

Accordingly, it is hereby

**ORDERED:**

1. Petitioner's Petition for Writ of Habeas Corpus By a Person in State Custody Under 28 USC § 2254 (Doc. #1) is **DENIED.**
2. The Clerk shall enter judgment, terminate all deadlines and motions, and close the case.

**DONE and ORDERED** at Fort Myers, Florida, this   6th   day of November, 2020.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA:  FTMP-1
Copies:
Counsel of Record